The only case that we have listed this morning is AdamsOutdoorAdvertisingLimited versus PennsylvaniaDepartmentofTransportation. Mr. Cavaccini. Yes, Your Honor. Thank you. May it please the Court, my name is Victor Cavaccini. I represent AdamsOutdoorAdvertisingLimited in this case. I would request three minutes of rebuttal if I can. Granted. This is a challenge to the Outdoor Advertising Control Act of 1971. Of the arguments that you're making, which one do you think you want to start with? Do you want to start with the vagueness or do you want to start with the facial challenge? Yes, I would like to, if I could, start with the content-based challenge. Okay. Thank you. So it's a challenge to the Pennsylvania Outdoor Advertising Control Act. And that, of course, was enacted in response to the Highway Beautification Act. It was enacted by the federal government, which required the states then to adopt sign regulations consisting with the federal act. And the basis of my challenge is that the regulations relating to on- and off-premise signs is content-based. And what's your best evidence in the record to suggest that they are content-based? It would be that in order to know how the sign is regulated, you necessarily need to review the message. But aren't there examples in the record, sir, of signs that would suggest that this is a content-based driven analysis? That is my whole case. I get that. So where in the record should we look for support? Well, the very fact that what happens under the act is that with respect to off-premise signs, they are limited in a variety of ways, location, size, spacing. With respect to on-premise signs along federal-aid primary highways, there is no regulation at all. And the administrator for the Pennsylvania Highway Beautification Act at PennDOT acknowledged that with respect to an on-premise sign adjacent to or near an interchange, there is no regulation at all. She acknowledged that it can be a million square feet. And it can be adjacent, immediately adjacent to an interchange. And so with respect to the on-premise sign, it advertises a commercial activity at the site. With respect to an off-premise sign, it usually advertises some other activity elsewhere. But obviously also provides political speech, social speech. And so if you've got to look at the message on the sign to know whether or not it can lie adjacent to an interchange, then in my view, that's content-based. In Adam's view, that's content-based regulation. So that has been the position adopted in Tennessee and in Texas. I cite these cases in my brief. I understand that the Tennessee case was argued before the Sixth Circuit. So I'm saying I think these are very real challenging cases that should be addressed. The secretary suggests, in fact argues, that you or your client lacks standing to challenge the exceptions. What constitutes your client's standing to bring these claims? Well, I think the harm, Your Honor, is that we can't speak at this particular location, which we call the Gulick site. So this is along US 22. It's at or near its intersection with Pennsylvania Route 512. And what happens is that a permit for this off-premise sign was denied. But an on-premise sign, and there are many at that particular intersection that lie adjacent to the intersection itself, have no limitation as to size under the 1971 law. There are photographs in the record and testimony about the on-premise signs that are at that intersection. One relates to a hotel. Another relates to an auto dealer. Going a little east, there is another intersection. And there are, again, on-premise signs that are adjacent to and actually within the proscribed area for interchanges. And so as a result of how this law is structured, there's winners or losers. And it is that which Adams believes gives rise to the unconstitutionality. And the lower court, and of course Secretary Richards, suggests that it's content neutral. And the lower court cites highway safety as the governmental interest that's being advanced. If the off-premise sign is denied, but you can put an on-premise sign there having a sign area of a million square feet, how is that governmental interest advanced? It's not obviously advanced at all. This is a federal aid primary, U.S. 22. You've got U.S. 1. You've got U.S. 202 in this area. So there are criteria that relate to the off-premise signs and certain standards that need to be observed. But absolutely none relating to the on-premise signs. I don't know if I answered your question, Judge. Start with the Reed v. Taylor Gilbert. How do you interpret that opinion as affecting your case? My only point there, Judge, was that it focuses on the sensitivity of the U.S. Supreme Court with respect to protecting free speech. It's not exactly on point. But again, I think it stands for the proposition, if you've got to look at the message and if you've got to look at the content to figure out how it's going to be regulated under the law, then it is content-based and strict scrutiny applies. And there was not any effort on the part of PennDOT here or Secretary Richards. You've got what starts out as a 9-0 opinion, but it has three concurrences with Justice Alito and two other justices saying that a provision distinguishing between on-premise and off-premise signs is not content-based. And that was joined by Justices Kennedy and Sotomayor. She would view the kind of regulation involved as content-neutral, and that was joined by Justices Breyer and Ginsburg. So it sounds like you might have six justices saying that what we've got here, if you apply it to here, by analogy, it's content-neutral. Your Honor, let me just say this in response to that. There is a provision in the Pennsylvania Act that speaks to divided highways. This particular road, highway, is divided. Now, I can understand if there is not a divided highway, and there are businesses necessarily that depend on the access from the highway. There, there might be a justification for allowing the off-premise sign, the liberality afforded an off-premise sign. But in this particular case, all of the on-premise signs that are adjacent to the interchange, they have other public ways to gain access. I don't know, when the justices speak to on-premise signs, what the situation is, what they're addressing, and how they're addressing it. But I think that there is something particular in the 1971 Act that, again, points out that there's not any need or justification to allow an on-premise sign to be a million square feet. But if this is content-neutral, if it is, I'm not saying you're agreeing with that, then what level of scrutiny do you have? Well, again, the lower court said it's public safety. But what level of scrutiny? We'll get to the... Oh, intermediate scrutiny, yes, time, place, and manner, yes. And so if it's intermediate scrutiny, then all it has to be is narrowly tailored to serve a significant government interest. And isn't there a significant government interest here? Certainly there is public safety. You know, PennDOT certainly has duties with respect to public safety. But under the regulations and the way the law is structured, how is that advanced? So you're going to regulate an on-premise sign and say we're not going to allow you to be there. But with respect to an on-premise sign, you're going to allow it to be immediately adjacent to the interchange itself, and no limitation as to height, no limitation as to size, et cetera. I keep coming back to these exemptions. Do the exemptions apply to this particular intersection or this particular office? They do apply. So if the exemptions apply, isn't it content-driven? Yes, very much. Yeah, I mean, I understand I'm asking your honors to throw out the baby with the wash water. But I'm really suggesting to you that the way the law is structured, that it is in many, many respects content-based. And I speak to this in my brief. I think I'm running out of time. I just would like to very briefly talk about the vagueness argument. And again... Doesn't the 97th letter of PennDOT make it crystal clear what this is about? I don't see the vagueness is what I'm saying. Well, I guess the standard of the test is can people of ordinary intelligence understand what it means? And historically, PennDOT has changed its mind four times. How is it that? Well, how is it that PennDOT needed to go back and forth four different times? I don't understand that argument that you have raised. Why does the fact that an administrative agency, in this case PennDOT, has changed the regulation from time to time introduce the notion of vagueness? Administrative agencies change their interpretations frequently. They may do it for sheer political reasons. But that doesn't dictate a conclusion that legally a text is vague, does it? Well, it does in my mind. To me, it's per se vague if they can't get it right and it takes them four times to go back and forth. And they're diametrically opposed to each other. Yes. And I don't think that PennDOT has a right to be engaging in advocacy or policy decisions. I think that they've got a law they've got to administer. Well, there's lots of play in the joints for an administrative agency to administer law. They don't go about doing their work based on a code that answers every single question. But this is a basic question. Do you have a spacing to an interchange of the same side as where the sign is located or on both sides? They're diametrically opposed. Well, I think I'm out of my time. I'm sorry. We'll have you back. Thank you. Thank you. Mr. Sorrell. Oh, not adjustable. Excuse me. May it please the Court. I'm Claudia Tesor. I'm from the Attorney General's Office. And I represent the Secretary of PennDOT, Leslie Richards. As Mr. Cavazzini said, this litigation focuses mainly now on the First Amendment challenge to the aspect of the Pennsylvania statute whereby one who erects an off-premise sign, as Adams is in the business of doing, has to comply with the interchange prohibition. Do the exemptions in the statute apply to the interchange prohibition? I think you've asked the question in a different way than I would put it. When you refer to the exemptions, I assume you mean the nine categories that are permitted under certain conditions. And the subsequent section of the law goes on to say that there are size, spacing, and lighting requirements applicable to the types of signs permitted under Clause Little Roman Numeral 4, 5, and 6 of the preceding section. So there are three of those nine categories that must comply with the size, spacing, and lighting criteria that are found at Section 2718.105. The interchange prohibition is one of those criteria. So it is true, with what you're getting at, it is true that the interchange prohibition of the statute doesn't apply to on-premises signs. And when you think about it, that's kind of logical because an on-premise sign is one that is on-premises that already exist in a certain location. And the location can't change. You can have a sign or not have a sign, but the location can't be adjusted. So carving that out is not irrational at all. In any event, that's what we have in this particular statute. So you think the statute is content neutral, and therefore it should be intermediate scrutiny, correct? You took the words right out of my mouth. So what evidence did you submit to justify the prohibition concerning the relevant government interests here, and narrow tailoring, and the availability of other channels of communication? In other words, what did you submit to show what the significant government interest is? Let's start with that. I believe the deposition testimony that was in the summary judgment record probably talked about what the provisions say and how they're administered. Can you point to something in the record? I can't right now. I'd have to look for it, and I'd be glad to look for it and report back to you if you would like me to. Okay. That would be helpful. I think the real question is whether it's content neutral. Let's just have a little bit. Did you submit evidence on showing significant government interests that this was narrowly tailored to achieve those interests? Was anything submitted? I know you're saying you'll try to find it, but I'm not finding it. I hate to say it, but I was not the trial attorney, so I don't know exactly what was submitted. I think the arguments were primarily based on case law that recognizes that certain situations give rise to adequate showings in this situation. If that's the case, doesn't this call for a do-over? For more evidence? Any evidence. Yeah, you have to meet the test. Well, I've never looked at it this way, and I don't think Mr. Cavazzini does either. I think the implicit position of the appellant has been that if the case is not found to be content-based, then PennDOT's okay. The key to that issue is found in Reed, of course. And that case tells us that whether a law is content neutral or not depends on whether it draws distinctions between, or based on, what some people are saying. An actual message or communicative content. Reed explicitly allows for the fact that not all distinctions in sign laws are content-based. The limits, Reed says, on, quote, size, building materials, lighting, moving parts, and so on, are content-neutral. And that's the kind of distinction that is drawn here in the manner that PennDOT has drawn it. And that's what Judge Restrepo was asking about earlier, that on-premises signs don't have to comply with the interchange prohibition. Both Justice Alito in Reed, and also in this Court's earlier RAPPA decision, reinforced this conclusion. And there are other cases as well that make it clear that an on-premises, off-premises distinction, in and of itself, cannot be considered content-based. Now, RAPPA distinguishes on-premises between saying that it's content-based if it's for sale or lease, but it's content-neutral if it's to talk about or tell us about activities on-premises. Correct? I'm sure you're accurately quoting RAPPA. I would emphasize the portion on page 1067 of the decision where it says an exemption for on-premises signs is not content-based. It was a very long, as you know, and complicated decision. I'm looking at 1066 and 1067, and it does make the distinction somehow between the two. And I can't figure out clearly whether that distinction for on-premise between sale or lease being content-based and activities being content-neutral survives Town of Gilbert. I think that RAPPA has not called into question by Town of Gilbert, but obviously, if there is a discussion of content-based activities, there is a discussion of content-neutral activities. Well, Town of Gilbert, if you look at Justice Alito's concurrence that on-premise versus off-premise is content-neutral, right? Yes. And that's why I'm saying that if RAPPA said otherwise, then read versus 10 of Gilbert Trump's RAPPA. That's the way the system works. I don't think there's a direct conflict, though. But you then run into the problem that Town of Gilbert is a 9-0 decision, but it's highly splintered despite the fact it's 9-0. I don't think so. I think that the Alito opinion, which was a concurrence, did not disagree with the result, and it did join in the judgment. And that's because of that particular case, because of the facts of that particular case. No one disagreed with the result and the facts of that particular case. Right. But they're talking about what kind of guidelines can you possibly lay down for future cases. And that's where I'm struggling. Well, I think what I would suggest is that, as I said, read itself on page 2222 does recognize that not all distinctions in sign laws are content-based. And I think Judge Alito's list of a variety of distinctions that are permissible is a response to that more general statement and an explanation of examples from his perspective of the kinds of distinctions that are not content-based. Because they have nothing to do with the message being conveyed. They are related to the way it is conveyed, not the subject or, excuse me, the content. The details or the communicative content of what is said. Mr. Tabbassini talked to us about the testimony of Adams's representative and her statement that it was essentially outrageous because on-premises signs can do anything they want, even having a sign that says, you know, signs as large as a million square feet. But I think that's not a fair reading of her testimony. And I'd like to emphasize that. She explained that Adams's off-premises signs, and she's a representative of Adams, cover all subjects and messages, commercial, political, advocacy, non-commercial, religious, public service, and so on. And she also acknowledged that as long as it happens on-premises, so do the signs of those who erect on-premises signs. They, too, can present commercial, political, public service messages, and they apparently do if the premises are engaged in that sort of business or activity. Adams's position is that you have to read the sign, excuse me, you have to, I guess he's talking about reading the sign. It's actually not clear whether you're talking about reading the sign or reading the statute to decide whether something is content-based. But I don't believe that's the proper mode of analysis. Frankly, if you take that view, you run into trouble, because you have to read the sign. Of course, you have to read the material in front of you when you're making a judgment or a decision. Otherwise, there's no way to know whether the law has any potential bearing in the situation that's presented. But this is only the first step under the Pennsylvania statute. You have to decide whether a particular sign qualifies as a member of a particular category, namely on-premises or off-premises. And if the mere act of reading the sign next to the statute were determinative, then everything would be considered content-based, because you always read. That can't be the right analysis or the right outcome. What matters in this case, or in cases like it, is whether a sign or a billboard falls into one category or another. And only the most limited, quick review of it will tell you whether a sign is on-premises or off-premises. Can I just ask you to, for the time you have left, to deal with the issue that the District Court held that the Pennsylvania Act violates the First Amendment by not including a time limit for PennDOT decisions on permit applications. What is your response to that? That part of the decision we did not challenge. And, in fact, within, I think, three weeks of the decision, PennDOT did exactly what the court asked it to do. It adopted an internal guideline calling for decisions within 60 days and spelling out how that would work. So that's not a loose end. But Adams seems to be asking for more than just a decision, doesn't it? If you read the blue brief, at least as I did, there seemed to be a suggestion that the court ought to go even farther. And that is to do, essentially, what the General Assembly ought to do. Well, I know what you're referring to, and I think that the court could only tell PennDOT to do something in its power to cure the problem it had identified. The Commonwealth's position, I assume, is that this court lacks the authority to direct the General Assembly to act and to bring the statute into such a condition as to meet the concerns of the Commonwealth. That's correct. I think that PennDOT, the judge made a sensible resolution of that. PennDOT did what the judge said to do. And I don't believe this court can order anybody but PennDOT to do anything else. And PennDOT doesn't have the power to change the statute itself. Aside from that aspect of the remedy that is or isn't sufficient, depending on whose side you're on, the only other part of this case that we haven't touched upon is the vagueness argument. And if you have any questions, I'll try to answer them. But otherwise, I would rest on my boots. Thank you. I would like to make a comment. I am conceding standing up to a point. How can you concede standing up to a point? It's a jurisdictional requirement. It doesn't exist. You don't have standing on one foot, and that's not enough. But if you're standing on two feet, that is enough. I didn't mean to be glib, Your Honor. What I was trying to get at is that the standing issue in the district court decision was pretty narrow. It said that Adams did not have standing to question exemptions for types of signs that Adams does not deal with. But the court did not find that Adams lacked standing outright. And there was no problem concerning Adams' standing to challenge the act on the other issues in the case. We certainly had no difficulty finding standing in either Real or RAPA, right? That's correct. And no one has to raise it. It's left to us, if it hasn't been raised, because it's jurisdictional. Right. There isn't really a standing issue to be debated here. The standing to challenge the provisions about, you know, official signs or directional signs or other kinds of signs among those categories is irrelevant, because that's not what this case is about. All right. Thank you very much. Thank you. May it please the Court. Your Honor, there was absolutely nothing offered to suggest or justify a governmental interest. It just totally, there was no effort made to do that. As Ms. Tesoro said, I think PNDOT just relied on its view that it's content neutral and that on-premise signs, because of their nature, that there is an intermediate basis to allow them, given intermediate scrutiny. The bottom line of all of this is if there is a Walmart that's adjacent to an interchange, it can put a sign there right next to the interchange itself. It can be a million square feet. That didn't come from Adams. That came from the administrator of PNDOT when she was asked, well, how large can the sign be? And eventually she got frustrated with my questions and said, well, it can be a million square feet. So and again, the concept of content-based. I mean, the only way you know if it's an on-premise sign is to look at the Walmart sign. And in fact, there is a Walmart store there. And then you know it's an on-premise sign that fits into that category. But John Smith, who's running for sheriff, he doesn't have that same opportunity. And the law is very clear that if there is a disparity among people as far as their ability to speak, that renders it unconstitutional. So are you asking us to strike the statute? Yes, Your Honor. In its entirety. I think it's up to the legislative body here in Pennsylvania to straighten it out. It's incongruous even. Forget the constitutionality. But does it make any sense that the Walmart sign has no limitation at all? Can be adjacent to the interchange? Can be as high as they want it to be, given the regulations? I mean, it just doesn't make any sense. It needs to be revisited. I understand this is law that evolved. You know, in 1965 was the Federal Act and Pennsylvania enacted in 1971. So as I said before, I'm asking you to throw out the baby with the wash water. And that's not easy for you to do. And it's presumptuous on my part to ask for that. But I just think that that's the remedy here. Lastly, with respect to the failure to give notice. The court cannot direct the Pennsylvania legislature, perhaps. But what it can do is say. Well, no, but what I was going to say is. But what it can do is say that the permit regulations shall not be enforceable. Unless and until the Pennsylvania legislature deals with this deficit in the law. So unless your honors have other questions for me, I appreciate your attention. Thank you very much. Thank you. We will take the case under advisement and ask the court to adjourn the proceedings.